Filed 2/8/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of DIANA and ANDREAS LIETZ<br><br>DIANA LIETZ,<br><br>    Appellant,<br><br>v.<br><br>ANDREAS LIETZ,<br><br>    Respondent. | G061866<br><br>(Super. Ct. No. 19D003709)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sandy N. Leal, Judge.  Affirmed.

Christensen Law and Robert J. Christensen for Appellant.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Barbero for Respondent.

\*        \*        \*

INTRODUCTION

In 2019, Diana Lietz petitioned for dissolution of her marriage to Andreas Lietz. Diana and Andreas disputed the value of the family home.[1] At trial, Diana presented a report appraising the home at $1.1 million, while Andreas presented a report appraising the home at $1,020,000. Both reports stated the home was on a lot with an area of 9,000 square feet. Both appraisers testified. The trial court found Andreas's appraiser to be more credible and found the home to be valued at $1,020,000.

In this appeal, Diana contends the trial court erred by precluding her from eliciting testimony from her appraiser that the home's lot size exceeded 9,000 square feet and from cross-examining Andreas's appraiser with evidence which, she claims, showed the appraisers used an incorrect lot size. We affirm. The trial court did not err because Diana failed to present competent evidence independently proving her assertion that the lot size exceeded 9,000 square feet. Without such evidence, testimony from her appraiser on that topic was inadmissible hearsay.

FACTS AND PROCEDURAL HISTORY

I. *Appraisals of the Family Home*

Andreas and Diana wed in September 1997. In May 2019, Diana petitioned for dissolution of the marriage. Andreas responded to the petition in July 2019.

Andreas and Diana disputed the value of the family home. Each obtained an appraiser, and appraisals were conducted on November 16, 2021. Andreas's appraiser, Neal Johnson, appraised the value of the home at $1,020,000. Diana's appraiser, Kristina L. Burke, appraised the value of the home at $1.1 million. Both appraisals recite the area of the property as 9,000 square feet and describe the shape of the lot as "irregular." Johnson's appraisal describes the home as being in "fair to average

_____

[1] As is customary in family law cases, we refer to the parties by first name to avoid confusion, and not out of disrespect.

2

condition" and needing "some major repairs . . . ." Burke's appraisal describes the home as being in "average condition" and "situated on an oversized lot . . . ." Andreas and Diana exchanged appraisal reports on November 18, 2021.

II. *Testimony and Cross-examination of Diana's Appraiser*

Trial, which commenced on November 19, 2021, addressed the value of the home, among other issues. Burke testified first. She testified from her car and did not have either appraisal report in front of her. She testified the appraised value of the home was $1.1 million and that she had only glanced at Johnson's appraisal.

During cross-examination, Andreas's counsel moved to exclude or strike Burke's testimony and appraisal report "due to lack of preparation and lack of ability to testify in this matter." In response, the court stated, "Essentially, you're doing it from a phone in a car, and you can't use your phone to look at documents and appear in a hearing." The court declared that Burke's manner of testifying created a problem in an evidentiary hearing. The court continued the trial to November 22, with the admonition, "Ms. Burke, I'm hoping that you will be in a different situation, not on a phone." Burke said she would be at her desk.

When cross-examination of Burke resumed on November 22, Diana's counsel asked to reopen direct examination because counsel had not had the chance to "discuss anything with Ms. Burke." The court told counsel she could ask further questions on redirect examination.

On November 22, Andreas's counsel completed her cross-examination of Burke. Before starting redirect examination, Diana's counsel announced, "There were some things that were discovered over the weekend regarding the property." Those "things" had to do with the lot size. During redirect examination, Burke testified that both appraisal reports used a lot size of 9,000 square feet, a figure which she had obtained

3

from a county records portal. After writing her appraisal report, Burke had conducted another investigation into the size of the lot.

Diana's counsel asked Burke if the lot size was larger than 9,000 square feet. Andreas's counsel objected. The court asked Diana's counsel if there was an amended report. Counsel responded, "No. We didn't amend it. [Burke is] just going to comment only [on] the fact that they—it's basically my client did some investigation, and they concurred that the—the information contained in the county portal is incorrect, and I could have her speak to that." The court stated, "That's going to be hearsay." Diana's counsel responded, "It's in public records."

The court stated, "Yes, it's with the city, but it's not in some type of public record that you're presenting to the court. So you want Ms. Burke to basically tell the court that she or someone else has discovered that the records were incorrect. But how am I to rely on that as trustworthy, and how is [Andreas's counsel going] to have an opportunity to effectively cross-examine anyone with that information if they don't actually have a public record or a County official who is going to provide that information?" In response, Diana's counsel stated, "I could ask her if she reviewed the record, and, if she did, she's an expert, and she can testify as to what she reviewed, the same way that both put in their [appraisal reports] 9,000 [feet]." Counsel stated that the lot was actually 10,400 feet, and both appraisal reports were incorrect in using 9,000 square feet.

Andreas's counsel objected on the grounds of hearsay and the information was outside the scope of prior testimony and of Burke's appraisal report. Counsel stated, "My expert hasn't had a chance to review any new information."

The court sustained the objection on the ground that Diana had not produced the public record that Burke had reviewed and was going to testify about. The court stated, "I'm going to sustain the objection. Either present the record or some—it

4

doesn't sound like it's even Ms. Burke talking to a county official; it sounds like it's your client."

Diana's counsel stated that she was "just trying to clarify" and asked, "I'm not allowed to ask her if she reviewed the records?" The trial court stated in response, "If you're saying that it's now not 9,000 square feet as placed in the report that your client presented to the court based upon some work this weekend, I want to see a document." The court explained, "I don't think this is fair for [Andreas's counsel] that I'm going to hear just hearsay testimony that there is a new record in the county portal or there is someone who provided a different statement about the lot size. [¶] I'm presuming that both of these experts, when they put in the dimensions, they pulled up records when they wrote that, saying it was an irregular lot; it was R1; it was 9,000 square feet. [¶] I'm going to need a little bit more. . . ." The court emphasized, "I want a record then if this is going to be disputed."

Diana's counsel stated that she could present "the record from the City," to which Andreas's counsel posed an objection pursuant to *People v. Sanchez* (2016) 63 Cal.4th 665. After a break Diana's counsel asked Burke whether a 9,000 square foot or 10,425 square foot lot is considered "a larger lot." The trial court told counsel she could proceed with numbers from Burke's appraisal report, but she could not "introduce a number that isn't supported by any evidence before the court." The court stated, "Everyone had time to hire appraisers, hire experts to prepare reports, and I've already continued this from Friday to Monday because of Ms. Burke's audio and [being] in her vehicle without her report. [¶] I'm proceeding today and with the numbers in evidence that the court has today." Burke testified, based on her research, the 9,000 square foot lot of the family home exceeded the size of 98 percent of the properties in the area by 50 percent. She believed a larger lot size generally brings a higher value.

5

III. *Testimony and Cross-examination of Andreas's Appraiser*

After Burke finished her testimony, Andreas's appraiser, Johnson, testified. Johnson confirmed he had reached an appraised value of $1,020,000 for the home. During cross-examination, he testified he had not measured the "plat size" of the lot and there was no means of doing so with the online resources available.

Diana's counsel stated she had just sent Andreas's attorney a measurement based on the plat map that Johnson had provided. Andreas's attorney objected on the ground the questioning exceeded the scope of direct examination. The trial court sustained the objection. On redirect Andreas's counsel asked Johnson whether Burke used the same plat map that Johnson had used in determining the lot size. The court interjected, "I can compare the two maps. They are the same."

IV. *The Trial Court's Decision*

The parties stipulated to receive both appraisal reports into evidence. The remaining contested issues were tried on November 23 and 29, 2001. Diana's counsel did not produce or attempt to admit into evidence the public record which she asserted supported a lot size of over 10,000 square feet for the home.

The trial court issued a decision at the conclusion of the trial on November 29, 2021. The court found Johnson to be more credible than Burke and accepted Johnson's valuation of the home. The court stated it "had quite a few issues with Ms. Burke's credibility." Neither party requested a statement of decision.

The judgment of dissolution, which was entered on August 5, 2022, stated, in relevant part, "After hearing testimony from both parties' experts, the Court finds [Andreas's] expert, Mr. Johnson, to be more credible than [Diana's] expert, Ms. Burke, and will use Mr. Johnson's valuation of the property ($1,020,000)."

6

## V. *Posttrial Survey and Appraisal of the Family Home*

After the trial court recited its oral statement of decision on November 29, 2021, Diana retained a licensed land surveyor, Bruce Hall, to survey the home. Hall concluded the home was on a lot that was 10,445.29 square feet in size. To his report, Hall attached copies of the assessor's parcel map that was included in both Burke's and Johnson's appraisal report and the original subdivision map for the tract in which the home was situated. Diana later obtained a certified copy of the subdivision map that was included in Hall's survey documents. Diana commissioned two appraisals of the home. Both appraisals were based on a lot size of 10,445.29 and both appraisals reached values exceeding those of the appraisal reports received into evidence at trial.

On August 19, 2022, Diana filed a notice of intention to move for a new trial and motion for new trial, along with a memorandum of points and authorities and a declaration from Diana.[2] The register of actions does not reflect that a motion for new trial had been filed; the register of actions reflects a "NOTICE—Other" was filed by Diana on August 19, 2022. That notice was pointed out by Andreas in his responding declaration.

Diana filed her notice of appeal on October 3, 2022. The motion for new trial was never heard and was deemed to have been denied by operation of law on October 18, 2022. (Code Civ. Proc. §§ 657, 660.) Diana does not challenge the denial of her motion for new trial.

---

[2] Diana's counsel moved for a new trial on the grounds of irregularity in proceedings and unfair surprise. (Code Civ. Proc. § 657, subds. (1), (3).) As to irregularity in proceedings, Counsel argued, "Diana and her expert, Kristina L. Burke . . . were deprived of the opportunity to present full testimony regarding the lot size of the Family Residence, even though the plat maps attached to both appraisal reports admitted into evidence demonstrated the area for the lot exceeded 9,000 square feet." As to surprise, counsel argued, "The normally-accurate [*sic*] databases used by real estate professionals for property information—CRMSL, Realist, and Datatree—had the incorrect lot size for the Family residence." Diana submitted as an exhibit to her motion for new trial the two new appraisal reports based on a 10,455.29 square foot lot.

7

DISCUSSION

Diana contends the trial court erred by precluding her from eliciting testimony from Burke to show that the home's lot size exceeded 9,000 square feet and from cross-examining Johnson with evidence purporting to show the lot size exceeded 9,000 square feet. She parses her claim into five arguments[3] addressing several evidentiary rulings made by the trial court. A trial court's decision to exclude evidence is reviewed for an abuse of discretion. (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 988.) The first three arguments overlap and can be resolved through the application of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).

I. *Sanchez*

Evidence Code section 801 allows an expert to render an opinion "[b]ased on matter (including his special knowledge, skill, experience, training, and education)

---

[3] Diana's five arguments are:

1. "The trial court abused its discretion on the second day of trial when it refused to allow testimony that the Family Residence's lot exceeded 9,000 square feet." The trial court's ruling being challenged is at reporter's transcript 57:19-58:3.

2. "The trial court abused its discretion in preventing appellant's expert from offering testimony that the square footage of the family residence's lot exceeded the amount listed in her report." The trial court's ruling being challenged is at reporter's transcript 59:2-60:5.

3. "The trial court failed to conduct a circumscribed inquiry into the basis for Appellant's Expert's conclusion that the Family Residence's lot exceeded 9,000 square feet and wrongfully prevented Appellant from presenting evidence that [the] basis for the conclusion of Appellant's expert was reasonable. " The trial court's ruling being challenged is at reporter's transcript 59:2-6 (partly the same as issue 2).

4. "The trial court erred by excluding evidence . . . regard[ing] the size of the Family Residence lot that showed an error in the data relied upon by Respondent's Expert and by preventing Appellant from using such evidence to challenge the opinion of Respondent's Expert." The trial court's ruling being challenged is at reporter's transcript 98:19-21.

5. "Whether the exclusion of evidence that the Family Residence's lot exceeded 9,000 square feet prejudiced [Diana]."

perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (*Id*., subd. (b).) Evidence Code section 802 states that an expert may "state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion."

In *Sanchez, supra*, 63 Cal.4th 665, the California Supreme Court explained—and limited—the situations in which an expert witness may relate hearsay evidence. The court confirmed that an expert may rely on hearsay in forming an opinion but concluded an expert may not relate case-specific facts asserted in hearsay statements "unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id*. at p. 686.) The court explained that the hearsay rule traditionally had not barred an expert from testifying about the expert's general knowledge in the expert's field of expertise. (*Id*. at p. 676.) "As such, an expert's testimony concerning his general knowledge, even if technically hearsay, has not been subject to exclusion on hearsay grounds." (*Ibid.*) "By contrast, an expert has traditionally been precluded from relating *case-specific* facts about which the expert has no independent knowledge. Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried. Generally, parties try to establish the facts on which their theory of the case depends by calling witnesses with personal knowledge of those case-specific facts. An expert may then testify about more generalized information to help jurors understand the significance of those case-specific facts. An expert is also allowed to give an opinion about what those facts may

mean. *The expert is generally not permitted, however, to supply case-specific facts about which he has no personal knowledge*." (*Ibid*., second set of italics added.)

The *Sanchez* court rejected the premise that expert testimony on case-specific information does not relate hearsay. (*Sanchez, supra*, 63 Cal.4th at p. 683.) "If an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay. Like any other hearsay evidence, it must be properly admitted through an applicable hearsay exception. Alternatively, the evidence can be admitted through an appropriate witness and the expert may assume its truth in a properly worded hypothetical question in the traditional manner." (*Id*. at p. 684, fn. omitted.) "What an expert cannot do," the court concluded, "is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id.* at p. 686.)

The court adopted this rule: "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth. If the case is one in which a prosecution expert seeks to relate testimonial hearsay, there is a confrontation clause violation unless (1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination, or forfeited that right by wrongdoing." (*Sanchez, supra*, 63 Cal.4th at p. 686, fn. omitted.)

Although *Sanchez* was a criminal case, its intention was to "clarify the proper application of Evidence Code sections 801 and 802, relating to the scope of expert testimony." (*Sanchez, supra*, 63 Cal.4th at p. 670.) Thus, the *Sanchez* rule concerning

10

state evidentiary rules for expert testimony applies in civil cases.  (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 10.)[4]

II.  *The Trial Court Correctly Applied* Sanchez *in Sustaining Objections to Questions Seeking to Elicit Testimony About the Lot Size*

The square footage of the lot on which the home is situated was without doubt a case-specific fact.  Thus, during redirect examination when Diana's counsel asked Burke if the lot size was larger than 9,000 square feet, counsel was eliciting case-specific facts.  The trial court pointed out that Burke's testimony would relate to hearsay statements.  Counsel did not disagree, but claimed the information was in public records.  Under *Sanchez*, Burke could not be permitted to testify that the lot size was larger than 9,000 square feet unless counsel produced and was able to admit into evidence the public record or other evidence that would have independently proven that fact.

Counsel did not identify or produce the public record.  Counsel argued she should be able to ask Burke if she had reviewed the public record.  That question would have violated *Sanchez*.  The trial court correctly applied *Sanchez* by sustaining an objection on the ground Diana had not produced the public record.

After the court sustained that objection, Diana's counsel asked, "I'm not allowed to ask her if she reviewed the records?"  The trial court responded by again telling counsel that if she wanted to prove the lot size was not 9,000 square feet (the number set forth in Burke's appraisal report) the court wanted to see the document proving that fact and was not going to permit hearsay testimony.  The court's response was a correct application of *Sanchez*.  Counsel stated she could present "the record from

---

[4]  The portion of *Sanchez* addressing the Sixth Amendment right to confront witnesses does not apply to civil proceedings because "[t]here is no right to confrontation under the state and federal confrontation clause in civil proceedings."  (*People v. Otto* (2001) 26 Cal.4th 200, 214.)

11

the City." But counsel did not identify that record or produce a copy of it. The court told counsel she could proceed with redirect examination of Burke using the lot size from her appraisal report. It was Diana's responsibility, not the trial court's, to present competent evidence supporting her claim that the lot exceeded 9,000 square feet in size.

III. *The Plat Map Does Not Reveal the Lot Size as a Matter of Simple Geometry*

Diana contends the plat map, which was attached to both appraisal reports, demonstrates based on "basic arithmetic" and "[s]imple geometry" that the home is on a lot that is greater than 9,000 square feet in size. At trial, Diana's counsel announced, during cross-examination of Johnson, that she had "just sent your attorney a measurement based on the plat map that you've provided." The trial court sustained an objection. The court did not err in doing so. Diana's counsel had not presented any testimony or other evidence to explain and support the computation of square footage based on the plat map alone.

On appeal, Diana includes, in both her opening brief and reply brief, a depiction of the lot on the plat map with calculations purporting to show the lot's square footage. Those calculations are based on the area of a parallelogram and the size of the triangle constituting the lot.

Although the area of the lot might be greater than 9,000 square feet, Diana's calculations do not show that because she used incorrect equations for calculating the areas of those shapes. She calculated the area of the parallelogram as base multiplied by side (base x side), and the area of the triangle as one side multiplied by another side times one-half (one-half (base x side)). We issued an order notifying the parties of our intent to take judicial notice of the proposition that the equation for calculating the area of a parallelogram is base multiplied by *height* (A = (base x height)) and the equation for calculating the area of triangle is one-half base multiplied by *height* (A = one-half (base x height)). We take judicial notice of those propositions. (Evid.

Code, §§ 451, subd. (f), 459.)  Mathematical equations and theorems are a proper subject of judicial notice.  (*People v. Bradley* (1982) 132 Cal.App.3d 737, 743, fn. 6.)

Andreas submitted a response to our notice of intent to take judicial notice in which he asserts the equation A = one-half (base x height) is accurate only for determining the area of an equilateral triangle or a right triangle.  The equation of A = one-half (base x height) can be used to determine the area of *any* triangle.  (See <https://www.mathematicalway.com/mathematics/geometry/area-triangle/> [as of Jan. 31, 2024], archived at: <https://perma.cc/HW48-MZW4>.)

In her response to our notice of intent to take judicial notice, Diana identified other formulas for measuring the area of a parallelogram which she claimed demonstrated the area of the lot exceeds 9,000 square feet.[5]  Her claim merely proves our point.  Measuring the area of the lot based on the plat map alone is not a matter of *simple* geometry, as Diana asserted in her appellate briefs.  Testimony—probably expert testimony—would have been necessary to explain and substantiate calculations of the lot size using the equations that Diana presented in her response.  Diana did not present or offer to present such testimony at trial.

Also attached to Diana's response to our notice of intent to take judicial notice was a document which she described as a "high resolution image of the plat map" and which, she says, was attached to her motion for new trial.  As we explain below, Diana has not challenged the denial of her motion for new trial.  She has presented no evidence that the plat map is to scale and would accurately show the size of the angles which might be necessary to accurately calculate the lot size.  As Andreas argued in his

---

[5]  Our notice invited the parties to submit responses in support of or opposition to the proposed action within 10 days of the date of the order.  Diana did not file her response within 10 days but waited until after Andreas had filed his response.  We permitted Diana to late-file her response; however, we decline to address any argument or proposition she makes in opposition or response to Andreas's timely-filed response.

response to our notice of intent to take judicial notice, we do not know whether the diagram presented in Diana's appellate briefs was to scale or otherwise reliable. "The probative value of maps and plats in establishing facts relating to common-law dedications depends on the circumstances surrounding their preparation, recording, or use." (26 Cal.Jur.3d (2024) Maps and Plats, § 74, citing *City of Manhattan Beach v. Cortelyou* (1938) 10 Cal.2d 653.) Further, as Andreas points out, the parallelogram overlaps the triangle, meaning the overlapping area was double-counted.

The best way to measure the area of the lot would be to hire a surveyor, which is what Diana did *after* the trial court rendered a decision. Diana moved for a new trial based on the surveyor's report and new appraisals; however, as we shall explain, Diana does not challenge the denial of her new trial motion, which was accomplished by operation of law.

IV. *Diana's Motion for a New Trial*

In Diana's appellate opening brief, Diana describes her motion for new trial and explains how it was denied by operation of law after she filed her notice of appeal. In her reply brief, she responds to what she characterizes as "inaccuracies" in the respondent's brief regarding her motion for new trial. Despite the many references to the motion for new trial, in neither her opening brief nor her reply brief does Diana argue the denial of her motion for new trial by operation of law should be reversed and the new trial motion set for hearing. The issues presented, argument headings, legal authorities, and arguments made in Diana's appellate briefs all concern the trial court's evidentiary rulings made during trial.

We conclude Diana is not challenging the denial of her motion for new trial by operation of law or, if she is, the challenge is forfeited. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 [argument forfeited because it was neither presented in a separate heading nor developed with reasoned argument and citation to authority]; *Sweetwater*

14

*Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 987 [arguments raised for the first time in a reply brief usually are deemed forfeited].)

DISPOSITION

The judgment is affirmed.  Andreas shall recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.